# IN THE UNITED STATES DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| RYAN TURNER INVESTMENTS, LLC, | ) ) ) |
| Appellant, | ) ) |
| v. | ) ) |
| JACKSON DURHAM FLORAL-EVENT DESIGN, LLC, | ) ) ) |
| Appellee. | ) ) |

Case No. 3:20-cv-00400

JUDGE CAMPBELL

## MEMORANDUM AND ORDER

This matter is before the Court on appeal from the United States Bankruptcy Court for the Middle District of Tennessee in the case *In re: Jackson Durham Floral-Event Design, LLC, Case No. 3:20-bk-0122*. Creditor-Appellant Ryan Turner Investments, LLC ("RT Investments") appeals the Order dismissing the Chapter 11 case. The appeal has been fully briefed and the parties have each filed an Appendix containing the relevant portions of the Bankruptcy Court record.[1] (*See* Doc. Nos. 13 and 17).

## I. BACKGROUND

Appellee Jackson Durham Floral-Event Design, LLC ("Jackson Durham") is a luxury, full-service event design company. Due in part to financial mismanagement by its prior CFO, Jackson Durham found itself in what it describes as "a deep financial hole" and filed for bankruptcy on January 9, 2020. (Doc. No. 16 at 8; Bankr. Petition, RTI Appx. at 1). RT Investments, which had

---

[1] For ease of reference, the Court will cite to the appendices filed on this record in this case. Appellant's appendix, filed at Doc. No. 13, is cited as "RTI Appx" and Appellee's appendix, filed at Doc. No. 17, is cited as "JD Appx."

provided financing to Jackson Durham's business operations, was listed in the bankruptcy filing as an unsecured creditor owed approximately $150,000. (Bankr. Petition, RTI Appx. at 7).

Before Jackson Durham filed its bankruptcy case, RT Investments initiated arbitration proceedings against Jackson Durham, its principle, Health Allen Ray, and its former CFO, Charles Vance-Broussard, regarding the debt. (RTI Appx. at 302). However, one day before Jackson Durham's answer was due, it filed the bankruptcy case. (*Id*. at 306, 308). This resulted in an automatic stay of the arbitration proceeding against Jackson Durham under 11 U.S.C. § 362. The arbitration, which proceeded against Ray and Vance-Broussard,[2] concluded on March 20, 2020. RT Investments then dismissed Jackson Durham in order to proceed to final judgment against the other defendants. (RTI Appx. at 309).

Shortly thereafter, on April 1, 2020, Jackson Durham moved the bankruptcy court to dismiss its bankruptcy case. (*Id*. at 66). As grounds for seeking dismissal, Jackson Durham explained that, although it had commenced the bankruptcy case to preserve its assets with the goal of confirming a plan of reorganization providing for the continuation of its business, the COVID-19 pandemic had severely impacted the entire event planning industry – events were cancelled or postponed indefinitely. (*Id*. at 68, ¶¶ 4-5). Jackson Durham concluded that, under the circumstances, it had no reasonable prospect of proposing a Chapter 11 plan of reorganization, as it had no way to forecast "the other side of the pandemic." (*Id*., ¶¶ 7, 9). In further support of dismissal, Jackson Durham suggested that its best prospect for continuing operations was to obtain

---

[2] RT Investments states that it resolved the claims against Vance-Broussard via settlement agreement. (*See* RTI Appx. at 77, n. 2).
2

a paycheck protection loan backed by the Small Business Administration.³ (*Id.*, ¶¶ 11-13). As a Chapter 11 debtor, it would be ineligible for this loan. Jackson Durham argued that dismissal of the bankruptcy case would have the benefit of allowing it to obtain needed funds to continue operations and that dismissal would not impair creditors' rights, interests, or avenues of relief under non-bankruptcy law. (*Id.*, ¶ 18).

RT Investments objected to dismissal of the bankruptcy case. (*See* JD Appx. at 167). Its arguments against dismissal were two-fold. First, RT Investments argued that it would be prejudiced by having to start the arbitration process anew, which would cost time and money. It maintained that, but for the bankruptcy stay, the claims against Jackson Durham would have been resolved together with its claims against the other parties. The second objection was that dismissal was generally not in the interest of the creditors. RT Investments explained that, under the terms of the DIP financing agreement, dismissal would result in immediate default and allow the DIP lender to foreclose on Jackson Durham's assets to the detriment of the other creditors. Furthermore, it argued, that it was "speculative" that Jackson Durham could obtain SBA funds and that it could very well file for bankruptcy again. Tying these objections together, RT Investments accused Jackson Durham of misusing the bankruptcy forum to avoid arbitration, protect its assets from creditors, and give first priority of all its assets to the DIP lender.

Jackson Durham responded that the dismissal would not have the detrimental effect RT Investments claimed. (JD Appx. at 167-170). It maintained that RT Investments would incur the expense of litigating the claims against it whether in arbitration or in the bankruptcy forum and the

---

³ The paycheck protection program is a federal loan program established under the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act"), to help small businesses suffering economic damage from COVID-19 related shutdowns. *See* Pub. Law 116-136, 134 Stat. 281 (2020).

3

additional costs of time and money from a dismissal would be minimal. With regard to the DIP financing, Jackson Durham argued that RT Investments, which is an unsecured creditor, would be in no worse position than if Jackson Durham had obtained a secured loan outside of bankruptcy. (JD Appx at 167-169).

The Bankruptcy Court held a telephonic hearing on April 7, 2020. (Hearing Trans., RTI Appx. at 291-301). At the hearing, Jackson Durham restated its reasons for seeking dismissal – "Everything dried up" and it had no business due to the COVID-19 pandemic, and it intended to apply for a PPP loan and other emergency relief available under the recently enacted CARES Act, but would be unable to do so while in bankruptcy. (*Id*. at 292). Jackson Durham noted that the SBA loans and grants were forgivable and would offset operating expenses that the debtor would otherwise be required to pay from cash. (*Id*. at 295). Jackson Durham represented that, without these loans, the debtor's cash would run out and it would be unable to remain in operation. (*Id*.).

RT Investments objected that Jackson Durham had not provided any "actual evidence of anything." The Court interrupted:

> THE COURT: Slow do[w]n one second. We're in a pandemic. Remember that. How much proof does the Court need about the suspension of operations and the impact that COVID-19 is having on not this business, but every business[?]
>
> MR. CHAREST: Well, I don't disagree with that point, sir. But the fact is they laid off – you know I'd be curious to know when they really laid off those workers. Because the reality is they went out of business long before COVID-19 ever was on anyone's horizon. Okay? They're taking advantage of this program to try and grab some free money. Fine. But the story that he's telling you is not accurate, and it's certainly not backed up by any facts, which is still important….

(*Id*. at 295-96).

4

Counsel for RT Investments discussed the effect the bankruptcy had on its arbitration proceedings and then, returning to the topic of the PPP loans, suggested that Jackson Durham was not eligible to for the loan and would have to make false representations to get the money. (*Id*. at 294-297).

The Court interrupted:

> Well, I'm going to cut you off right there. That's not this Court's issue. So the issue before this Court is the motion to dismiss. Frankly, nothing that you've said matters for purposes of this motion to the extent of what's in the best interest of the estate at this point in a case where the debtor cannot operate currently in a Chapter 11 unless the debtor gets an infusion of funds. And these funds are coming from an apparent requirement that they not be in Chapter 11.

(*Id*. at 297).

RT Investments responded that there was no evidence that this short-term infusion of funds would allow the business to recover. (*Id*. at 298). The attorneys then discussed their interpretations of the CARES Act legislation. (*Id*. at 299-300). Following that discussion, the Court orally ruled:

> My ruling on the motion is granted based on the simple and undeniable fact that in the Chapter 11, this debtor could not reorganize in this situation with the current COVID-19 pandemic, and also (indiscernible) convert the case. Dismissal, in this Court's opinion, is the most viable option and it keeps all the parties in an equal setting in which they could avail themselves of the CARES Act (indiscernible) and the debtor has a shot, at least, of obtaining funds to continue operations.

(*Id*. at 300-01).

The written Order states, in relevant part:

> Following appearances, and arguments by counsel for the respective parties, and after considering such arguments and pleadings, the Court **GRANTED** the Motion to Dismiss.
>
> By reference, this Order incorporates the Court's Findings of Fact and Conclusions of Law stated orally on the record pursuant to Fed. R. Bankr. P. 7052. Based on the pleadings before the Court and the arguments of counsel,

5

> the Court finds that cause exists to dismiss the Debtor's bankruptcy pursuant to Section 1112(b),
>
> Accordingly, it is hereby **ORDERED** that the Chapter 11 case of Debtor, shall be, and hereby is, **DISMISSED**.

(Order Granting Debtor's Expedited Motion to Dismiss Chapter 11 Case, RTI Appx. at 286-87).[4]

## II. JURISDICTION

This Court has jurisdiction to hear appeals from final judgments of the Bankruptcy Court under 28 U.S.C. § 158(a)(1). As a threshold matter, Appellee has challenged the Court's subject matter jurisdiction to hear the appeal based on RT Investment's alleged lack of standing and the doctrines of constitutional and equitable mootness.

Whether a court has subject-matter jurisdiction is a "threshold determination" in any action. *Am. Telecom Co. v. Republic of Lebanon*, 501 F.3d 534, 537 (6th Cir. 2007). This reflects the fundamental principle that "[j]urisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (quoting *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1868)).

### A. Standing

Article III of the Constitution limits the jurisdiction of federal courts to adjudication of "cases" and "controversies." U.S. Const., Art. III, § 2. Integral to the case or controversy requirement is the doctrine of standing – a plaintiff must show a "personal stake in the outcome of

---

[4] The Court struck several provisions of Jackson Durham's proposed order, including language describing the cause for dismissal as "including but not limited to removing what appears to be a substantial impediment to the Debtor's ability to apply for an potentially receive funds under the federal PPP and EIDL programs, and that dismissal is in the best interests of the Debtor's estate and creditors." (*See* Order Granting Debtor's Expedited Motion to Dismiss Chapter 11 Case, RTI Appx. at 286-87).

6

the controversy as to … justify [the] exercise of the court's remedial powers on [their] behalf." *Nikolao v. Lyon*, 875 F.3d 310, 315 (6th Cir. 2017) (quoting *Town of Chester, N.Y. v. Laroe Estates, Inc.*, 137 S.Ct. 1645, 1650 (2017)). Article III standing "must be met by persons seeking appellate review, just as it must be met by persons appearing in courts of first instance." *In re Capital Contracting Co.*, 924 F.3d 890, 897 (6th Cir. 2019) (quoting *Hollingsworth v. Perry*, 570 U.S. 693, 705 (2013)). This rule applies equally to parties who file appeals from bankruptcy courts. *Id*.

Article III standing requires a party to have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id*. at 1548 (quoting *Lujan v. Defenders of Wildlife*, 540 U.S. 555, 560 (1992)). Where, as here, the Article III standing inquiry is with regard to an appeal, "the focus shifts to injury caused by the judgment rather than injury cause by the underlying facts." *Schier v. Nathan* (*In re Capital Contracting Co.)*, 924 F.3d 890, 897 (quoting 15A Charles Alan Wright at al, Federal Practice and Procedure § 3902 (2d ed.)).

"Appellate standing in bankruptcy cases is more limited than Article III standing or the prudential requirements associated therewith." *In re Meridian Venture Partners, LLC*, 507 B.R. 31 (B.A.P. 6th Cir. 2013) (quoting *Harker v. Troutman (In re Troutman Enters.)*, 286 F.3d 359, 364 (6th Cir. 2002)). "In order to have standing to appeal a bankruptcy court order, an appellant must be a 'person aggrieved' by the bankruptcy court's order." *Id*. (citing *Fidelity Bank, N.A. v. M.M. Group, Inc*., 77 F.3d 880, 882 (6th Cir. 1996)). Standing is limited to persons who "have

7

been directly and adversely affected pecuniarily by the order … Only when the order directly diminishes a person's property, increases his burdens, or impairs his rights" will an appellant have standing to appeal. *Id*. The burden on proving that a party is a "person aggrieved" is on the appellant asserting standing to pursue an appeal. *Id*.

The parties make the same argument with regard to Article III standing and bankruptcy standing. Jackson Durham argues that RT Investments cannot show that it suffered an injury or pecuniary harm as a result of the dismissal of its Chapter 11 case because the dismissal did not direct any relief against RT Investments. Jackson Durham argues not only that RT Investments did not suffer any harm, it is actually better off because the rights that were curtailed as a result of the bankruptcy filing were restored by the dismissal, leaving it free to pursue its claims free from the constraints of the bankruptcy process.

RT Investments claims it was negatively impacted by the dismissal for the two reasons raised before the Bankruptcy Court. First, the dismissal affected its ability to receive payment on its claim because dismissal was an event of default under the DIP financing agreement and the DIP lender had been granted a first priority lien. Second, RT Investments argues that instead of pursuing its claim in bankruptcy, for which it had already incurred some expense, it will be forced to recommence arbitration proceedings, which will cost both time and money.[5]

It is difficult to conceive of a circumstance in which a creditor with an unresolved claim does not have standing to appeal a dismissal of a bankruptcy. Appellee has not cited any cases where a creditor with unresolved claims lacks standing to appeal an order that dismisses the entire

---

5    While the appeal was pending, RT Investments reinstituted arbitration proceedings against Jackson Durham. (*See* Demand for Arbitration (Aug. 3, 2020), Doc. No. 16-2).

8

case. The Court finds that RT Investments, as a creditor with an unresolved claim, is a "person aggrieved" by the dismissal such that it has standing under Article III and under the more restrictive standard required for bankruptcy appeals.

In reaching this conclusion, the Court is mindful that the bankruptcy proceedings benefit both debtors and creditors. *Florida Dept. of Revenue v. Piccadilly Cafeterias, Inc*., 554 U.S. 33, 51 (2008) ("Chapter 11 strikes a balance between a debtor's interest in reorganizing and restructuring its debts and the creditor's interest in maximizing the value of the bankruptcy estate."); *see also Toibb v. Radloff*, 501 U.S. 157, 163 (1991) ("Chapter 11 [] embodies the general Code policy of maximizing the value of the bankruptcy estate.").

Moreover, the interests of creditors are almost certainly affected by a dismissal of the bankruptcy case. The Supreme Court has explained:

> A dismissal typically "revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case"—in other words, it aims to return to the prepetition financial status quo. § 349(b)(3).
>
> Nonetheless, recognizing that conditions may have changed in ways that make a perfect restoration of the status quo difficult or impossible, the Code permits the bankruptcy court, "for cause," to alter a Chapter 11 dismissal's ordinary restorative consequences. § 349(b).

*Czyzewski v. Jevic Holding Corp*., 137 S. Ct. 973, 978-79 (2017).

Although in some cases a bankruptcy court will endeavor to return the parties to the pre-petition status quo, the Bankruptcy Court did not do so here. Instead the parties found themselves in a new posture, undoubtedly affected by the bankruptcy proceedings and the passage of time and without the protections afforded by the bankruptcy process.

For all of these reasons, the Court finds that Appellant has established both Article III standing and standing to appeal the order of the Bankruptcy Court.

9

## B. Constitutional and Equitable Mootness

Appellee also challenges the Court's subject matter jurisdiction based on constitutional and equitable mootness. A case is constitutionally moot when "the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Los Angeles Cty. v. Davis*, 440 U.S. 625, 630 (1979). When "an event occurs while a case is pending on appeal that makes it impossible for the court to grant 'any effectual relief whatever' to a prevailing party," an appeal must be dismissed as moot. *Church of Scientology of California v. United States*, 506 U.S. 9, 12 (1992).

Equitable mootness is grounded in the notion that, with the passage of time after a judgment in equity and implementation of that judgment, effective relief on appeal becomes impractical, imprudent, and therefore inequitable." *In re City of Detroit, Mich.*, 838 F.3d 792, 798 (6th Cir. 2016). The doctrine, most commonly applied to appeals of orders confirming Chapter 11 bankruptcy plans, requires courts to apply a three part test: (1) whether a stay has been obtained; (2) whether the plan has been substantially consummated; and (3) whether the relief requested would significantly and irrevocably disrupt the implementation of the plan or disproportionately harm the reliance interest of other parties not before the court. *ServisFirst Bank v. Curae Health, Inc.*, No. 3:19-cv-00432, 2020 WL 1678080, at *5 (M.D. Tenn. Apr. 6, 2020).

Relying upon substantially the same grounds as the challenge to standing, Jackson Durham contends that dismissal of the bankruptcy case cannot be redressed by a favorable decision – i.e. reversal of the dismissal order – and that the appeal is, therefore, constitutionally moot. Jackson Durham argues that events that occurred post-dismissal cannot be unwound, so that even if the Court were to reverse the dismissal, the debtor would not be in the same financial position as it was pre-dismissal. Among the post-dismissal changes cited are that Jackson Durham obtained PPP

funding, used the PPP funds to pay wages for critical employees, and spent cash for business expenses. In addition, Jackson Durham notes that RT Investments reinstituted the arbitration proceeding in August 2020.

Appellee has not identified any case finding a creditor's appeal of an order of dismissal constitutionally moot and the Court finds no cause to conclude that the appeal is moot when RT Investments' underlying debt claim remains unresolved and would be part of the bankruptcy case if the dismissal is reversed.

With regard to the suggestion that the appeal is equitably moot, there are no grounds to dismiss the appeal on this basis. As stated by Jackson Durham, the doctrine of equitable mootness is most often applied to orders confirming Chapter 11 bankruptcy plans. While the doctrine may be applicable outside that context, Appellee has cited no case in which it has been applied to foreclose review of a dismissal order. Nor is there any indication that the bankruptcy court would be unable to contend equitably with the current financial status of the parties.

Finding this appeal neither constitutionally nor equitably moot, the Court will proceed to the merits of the appeal.

### III.  STANDARD OF REVIEW

The Court reviews the Bankruptcy Court's findings of fact for clear error and conclusions of law de novo. Fed. R. Bankr. P. 8013; *B-Line, LLC v. Wingerter (In re Wingerter)*, 594 F.3d 931, 936-36 (6th Cir. 2010).

A bankruptcy court has broad discretion to dismiss a Chapter 11 case under 11 U.S.C. § 1112(b). *In re Creekside Sr. Apartments, L.P.*, 489 B.R. 51, 60 (6th Cir. B.A.P. 2013). The dismissal of a bankruptcy case "for cause" is reviewed for an abuse of discretion. *Mitan v. Duval (In re Mitan)*, 573 F.3d 237, 241 (6th Cir. 2009); *In re Lee*, 467 B.R. 906, 911 (B.A.P. 6th Cir.

2012). The bankruptcy court's decision should be reversed if it "relied upon clearly erroneous findings of fact, improperly applied the governing law, or used an erroneous legal standard." *Elec. Workers Pension Trust Fund of Local Union #58 v. Gary's Elec. Serv. Co.*, 340 F.3d 373, 378 (6th Cir. 2003); *Kaye v. Agripool, SRL (In re Murray, Inc.)*, 392 B.R. 288, 296 (6th Cir. BAP 2008) (citation omitted). "The question is not how the reviewing court would have ruled, but rather whether a reasonable person could agree with the bankruptcy court's decision; if reasonable persons could differ as to the issue, then there is no abuse of discretion." *Barlow v. M.J. Waterman & Assoc., Inc.*, 227 F.3d 604, 608 (6th Cir. 2000).

## IV.     ANALYSIS

Section 1112(b) of the Bankruptcy Code provides, in relevant part:

> (b)(1) Except as provided in paragraph (2) and subsection (c), on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate.
>
> (2) The court may not convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter if the court finds and specifically identifies unusual circumstances establishing that converting or dismissing the case is not in the best interests of creditors and the estate, and the debtor or any other party in interest establishes that—
>
> >  (A)  there is a reasonable likelihood that a plan will be confirmed within the timeframes established in sections 1121(e) and 1129(e) of this title, or if such sections do not apply, within a reasonable period of time; and
> >
> >  (B)  the grounds for converting or dismissing the case include an act or omission of the debtor other than under paragraph (4)(A)—
> >
> > >  (i)   for which there exists a reasonable justification for the act or omission; and

> (ii) that will be cured within a reasonable period of time fixed by the court.

11 U.S.C. § 1112(b).

Section 1112(b) provides a non-exclusive list of examples of "cause" justifying dismissal, which includes, "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation." 11 U.S.C. § 1112(b)(4).

To determine whether cause exists to dismiss a case under Section 1112(b), a court must engage in a "case-specific" factual inquiry which "focus[es] on the circumstances of each debtor." *In re Creekside Sr. Apts., L.P.*, 489 B.R. 51, 60 (B.A.P. 6th Cir. 2013) (quoting *United Savs. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd. (In re Timbers of Forest Assocs. Ltd.)*, 808 F.2d 363, 371-72 (5th Cir. 1987)). The movant bears the burden of proof by a preponderance of the evidence. *Id.* at 60.

Once a party demonstrates that cause exists to convert or dismiss the case under Section 1112(b), a court is required to dismiss or convert the case unless the court finds and specifically identifies "unusual circumstances establishing that converting or dismissing the case is not in the best interests of the creditors or the estate…" 11 U.S.C. § 1112(b)(2).

On April 2, 2020, Jackson Durham moved to dismiss the bankruptcy case. (RTI Appx. at 66). As cause for dismissal, it stated that the health and economic crisis caused by the COVID-19 pandemic had effectively shuttered its business and that it had "no reasonable prospect of proposing a confirmable Chapter 11 plan of reorganization." (*Id.* at 68, ¶ 7). Jackson Durham specifically cited Section 1112(a)(4)(A), which requires the moving party to demonstrate "substantial or continuing loss to or diminution of estate assets" and "absence of a reasonable likelihood of rehabilitation." (*Id.*). Jackson Durham also explained that it would have a better

13

chance of restructuring the business and continuing operations outside of bankruptcy, because while in bankruptcy it was ineligible for COVID-19 relief, such as paycheck protection program loans. (*Id.*).

RT Investments objected to the dismissal on grounds that dismissal would only serve the interests of Jackson Durham and was not in the best interest of the creditors. RT Investments argued that dismissal was contrary to its specific interests, citing the time and money spent initiating arbitration, which would have to be restarted if the bankruptcy were dismissed. RT Investments also argued that the dismissal was not in the creditors interests because it would constitute an event of default under the terms of a debtor in possession loan approved during the bankruptcy, and would allow the lender to exercise its first priority and foreclose on Jackson Durham's assets. (RTI Appx. at 80).

At the hearing, Judge Walker found that the "debtor could not reorganize in this situation with the current COVID-19 pandemic" and "in this Court's opinion, [dismissal] is the most viable option and it keeps all the parties in an equal setting in which they can avail themselves of the CARES Act … and the debtor has a shot, at least, of obtaining funds to continue operations." (Hearing Trans., RTI Appx. at 300-01).

RT Investments argues that the bankruptcy court abused its discretion dismissing Jackson Durham's case for two reasons: (1) Jackson Durham provided no evidence to support the dismissal; and (2) the bankruptcy court failed to consider the interests of the creditors. Neither of these contentions is supported by the record.

The bankruptcy court based its decision primarily on the effect pandemic-related closures were having on all businesses. While the Court did not require evidence of the effect the COVID-19 related closures and cancellations had on Jackson Durham's event design business, RT

14

Investments effectively waived this objection. Although it initially objected to the lack of evidence on this point, it ultimately conceded that the Court did not require evidence on this issue. The following exchange took place following RT Investments objection to the lack of evidence:

> THE COURT: Slow do[w]n one second. We're in a pandemic. Remember that. How much proof does the Court need about the suspension of operations and the impact that COVID-19 is having on not this business, but every business [?]
>
> MR. CHAREST: Well, I don't disagree with that point, sir.

(Hearing Trans., RTI Appx. at 295).

The Court is cognizant that on the date of the hearing, April 7, 2020, the parties and the bankruptcy court were well aware of the pandemic and its effects on daily life and business. The President of the United States had declared a national emergency,[6] and the Governor of Tennessee and many other states had declared a state of emergency, ordered non-essential businesses to close, and issued stay-at-home orders.[7] The hearing itself was conducted via telephone conference.

Under these circumstances, particularly given RT Investments' apparent consent to proceed without evidence showing that government-mandated COVID-19 restrictions caused Jackson Durham to suspend operations, it was not an abuse of discretion for the bankruptcy court to proceed without formally admitting evidence or taking judicial notice of the existence or impact of the pandemic. This fact alone would be sufficient to establish that Jackson Durham was

---

[6] *Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak*, Presidential Proclamation No. 9994, 85 Fed. Reg. 15,337 (March 18, 2020).

[7] From March 1, 2020 to May 31, 2020, 42 states and territories issued mandatory stay-at-home orders. See Amanda Moreland, et al., *Timing of State and Territorial COVID-19 Stay-at-Home Orders and Changes in Population Movement—United States, March 1-May 31, 2020*, 69 MORBIDITY AND MORTALITY WEEKLY REPORT (Centers for Disease Control, U.S. Dept. of Health and Human Services), Sept. 4, 2020, at 1198; available at www.cdc.gov/mmwr/volumes/69/wr/pdfs/mm6935a2-H.pdf (last visited Feb. 1, 2021); Tenn. Exec. Order No. 14 (March 12, 2020).

undergoing a substantial and continuing loss and that there was no reasonable likelihood of rehabilitation. These findings constitute "cause" to order dismissal under Section 1112(b).

Moreover, "cause" is not limited to the grounds stated in Section 1112(b)(4). *See* 11 U.S.C. § 102(3) (in construing the Bankruptcy Code, the terms "includes" and "including" are not limiting). The bankruptcy court also based its decision, in part, on the determination that it appeared Jackson Durham could obtain a paycheck protection loan if it were not in bankruptcy.[8] Jackson Durham had attached a sample loan application form as an exhibit to the motion to dismiss and this document and other information about the CARES Act relief, was raised by both parties and considered by the bankruptcy court during the hearing. (*See* Hearing Trans., RTI Appx. at 291-301).

The record also indicates that the bankruptcy judge considered the interests of both the debtor and the creditors. He found that the dismissal, which would allow Jackson Durham to potentially obtain CARES Act funds was the "most viable option" because it "keeps all of the parties in an equal setting" and gives the debtor "a shot … of obtaining funds to continue operations." (*Id*. at 301).

On this record, the Court finds that the bankruptcy court did not abuse its discretion in dismissing the bankruptcy case.

---

[8] At the time of the hearing, the CARES Act had only recently been signed into law. CARES Act, Pub. Law 116-136 (March 27, 2020). Speculation about Jackson Durham's entitlement to the funds was due in part to the newness of the law and that neither the Small Business Administration nor the Treasury Department had promulgated final rules with regard to the paycheck protection loans. *See Business Loan Program Temporary Changes; Paycheck Protection Program—Revisions to First Interim Final Rule*, 85 Fed. Reg. 36308 (June 16, 2020) (stating that the first interim rule was posted on the SBA website on April 2, 2020, and published in the Federal Register on April 15, 2020).

Jackson Durham requests the Court consider whether this appeal is a frivolous appeal under Bankruptcy Rule 8020 and award damages and double costs. (Doc. No. 16 at 42). Bankruptcy Rule 8020 provides, "If the district court … determines that an appeal is frivolous, it may, after a separately filed motion or notice from the court and reasonable opportunity to respond, award just damages and single or double costs to the appellee." Rule 8020 is "materially the same as Federal Rule of Appellate Procedure 38 and is intended to provide … district courts hearing bankruptcy appeals with coextensive authority to award sanctions for frivolous appeal." *In re Reese*, 485 Fed. App'x 32, 35 (6th Cir. 2012). An appeal is frivolous "when the result is obvious or when the appellant's argument is wholly without merit." *In re Smyth*, 470 B.R. 459, 462 (B.A.P. 6th Cir. 2012).

The request for sanctions is not properly before the Court, as Jackson Durham has not filed a separate motion as required by the Rule. However, the Court is not of the opinion that Appellant's arguments were "wholly without merit" so as to warrant sanctions.

## V. CONCLUSION

For the reasons stated herein, the bankruptcy court did not abuse its discretion when it granted the motion to dismiss the bankruptcy case. The decision of the bankruptcy court is, therefore, **AFFIRMED**.

It is so **ORDERED**.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE